UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

TIMOTHY J. TRUSS and
LeANN M. TRUSS,

        Debtors.

Case No. 08-21626

Chapter 13

_____

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION
TO CONFIRMATION OF AMENDED PLAN

_____

This matter came before the Court on the chapter 13 trustee's objection to confirmation of the debtors' amended plan. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, this decision constitutes the Court's findings of fact and conclusions of law.

BACKGROUND

The relevant facts are not in dispute. The debtors filed a chapter 7 petition on February 27, 2008. The debtors' motion to voluntarily convert the case to chapter 13 was granted on August 7, 2008. The second amended plan filed December 2, 2008, provided for monthly payments of $301.14 from the debtors. Those payment were projected to increase by an additional $128.86 in August 2009 when LeAnn Truss becomes obligated to commence her student loan payments, for total monthly plan payments of $430.00 for months eighteen through sixty. During those latter months, the plan provided for payments of $300.63 per month to Chase Education Finance, the debtor's student loan creditor. The regular payments on the student loans were scheduled to extend beyond the duration of the plan. The plan treated Chase as a separately

classified unsecured creditor and provided it with a dividend of approximately 60% to 79%, representing total contract payments while the plan is in effect. The remaining unsecured creditors were projected to receive a dividend of 2.44%. If the funds were instead distributed pro rata, all unsecured creditors would receive a dividend of approximately 23.5%.

The debtors earned above median income for their applicable family size in Wisconsin during the six months before filing. However, they have experienced a significant drop in income, and their disposable income will be calculated based on their ability to pay over their proposed 60 month plan. *See In re Hilton*, 395 B.R. 433 (Bankr. E.D. Wis. 2008). Nevertheless, the necessity of several of the debtors' budgeted expenses were questioned by the trustee, including two cell phones for $120 per month; a land line telephone for $30 per month; internet access for $45 per month; cable television for $90 per month; haircuts, toiletries, grooming, and cosmetics for $97 per month; pet expenses for $65 per month; and gifts for $50 per month.

Both the debtors and the trustee filed briefs in support of their positions and an evidentiary hearing was held on February 10, 2009, after which the court took the matter under advisement.

ARGUMENTS

The trustee argued the plan unfairly classified the unsecured student loan claim as if it were entitled to priority treatment. Under the separate classification scheme, a proposed dividend to unsecured creditors of 2.44% – compared to a dividend of 23.5% if they were given a pro rata share – is unreasonable under the standard set forth by the Seventh Circuit in *In re Crawford*, 324 F.3d 539 (7th Cir. 2003). *See also In re Zahringer*, 2008 WL 2245864, 2008 Bankr. LEXIS 1770 (Bankr. E. D. Wis. May 30, 2008) (holding student loans generally do not

2

qualify as special circumstances that can be deducted from the bottom line of the means test, reducing the amount paid to general unsecured creditors).

According to the debtors, because they propose to maintain payments pursuant to the nondischargeable note and do not propose to accelerate the payments on the student loans, their plan is confirmable. While 11 U.S.C. § 1322(b)(1) provides that a plan may not unfairly discriminate against any class of unsecured claims, section 1322(b)(5) allows for the cure and maintenance of long-term obligations, such as the student loans at issue. *See In re Hanson*, 310 B.R. 131 (Bankr. W.D. Wis. 2004).

## DISCUSSION

*May the debtors' chapter 13 plan discriminate between payments to cover long-term nondischargeable student loans and payments to other unsecured creditors?*

The debtors, as the proponents of the plan, have the burden of showing that their proposed plan is confirmable and does not unfairly discriminate against a class of general unsecured creditors. *Cf. In re Girdaukas*, 92 B.R. 373, 376 (Bankr. E.D. Wis. 1988) (finding "the debtor, as proponent of the plan, has the burden of establishing that the plan has been proposed in good faith"). The issue is whether the separate classification of long term debt allowed by section 1322(b)(5), which results in a higher percentage payment to that creditor during the pendency of the plan than will be received by other unsecured creditors, constitutes prohibited discrimination.

Section 1322(b)(1) of the Bankruptcy Code provides that a chapter 13 plan may designate a class of unsecured claims, but may not discriminate unfairly against any class so designated. Relevant to this case, section 1322(b)(5) provides that a plan may also provide for the

3

maintenance of payments while the case is pending on any unsecured claim on which the last payment is due after the date on which the final payment under the plan is due. The student loan payments at issue extend beyond the life of the plan. They are also not subject to the debtor wife's discharge. 11 U.S.C. § 1328(a)(2).

The debtors urge the court to follow the reasoning set forth by Judge Martin in *In re Hanson*, 310 B.R. 131 (Bankr. W.D. 2004). In that case, the debtors were under contract to pay $776.94 per month to the student loan creditor and proposed a chapter 13 plan that would pay $175 per month for 36 months to the trustee to be distributed to creditors, including the student loan creditor, for any claimed arrearage due on the student loan contract. The plan further provided that the debtors would pay directly to the student loan creditor $437.27 per month on their student loans, an amount less than the full monthly payment to the student loan creditor. Judge Martin noted that the treatment of long term unsecured claims under section 1322(b)(5) appeared to be in conflict with the uniformity of treatment generally required by section 1322(b)(1). *Id*. at 133. Because section 1322(b)(5) is specific and clear in its language, statutory construction principles dictated that it trump the more general terms of section 1322(b)(1). In other words, if the provisions of section 1322(b)(5) for the cure of arrearages and maintenance of regular payments on long term student loan indebtedness apply, then the specific provisions of section 1322(b)(5) supercede the general unfair discrimination provisions of section 1322(b)(1). Ultimately, the *Hanson* court concluded that section 1322(b)(5) did not apply in the case before it because the debtors were proposing to pay less than the full monthly payment to the student loan creditor. Since section 1322(b)(5) did not apply, the court turned to section 1322(b)(1) and denied confirmation of the plan, concluding that the debtors' plan failed to demonstrate that its

4

treatment of the student loan creditor was not unfair discrimination between the classes of unsecured creditors. *Id*. at 135.

Because the debtors in this case are proposing to make the full monthly payment to the student loan creditor, under the reasoning of *Hanson*, their plan does not run afoul of the specific language of 11 U.S.C. § 1322(b)(5). The plan maintains contractual payments on the long term debt, whereas the plan in *Hanson* changed them.

Other courts have developed standards for what constitutes unfair discrimination under section 1322(b)(1). According to the Seventh Circuit Court of Appeals, in determining whether a proposed plan discriminates unfairly, the bankruptcy judge is to seek a result that is reasonable in light of the purposes of the relevant law, that is, chapter 13 of the Bankruptcy Code. *In re Crawford*, 324 F.3d 539, 542 (7th Cir. 2003). After criticizing the various tests formulated by the courts for determining the legitimacy of classifications, the Seventh Circuit admitted it was also unable to come up with a good test. *Id*. at 542. The court did however provide the following guidance: "if without classification the debtor is unlikely to be able to fulfill the Chapter 13 plan and the result will be to make his creditors as a whole worse off than they would be with classification, then classification will be a win-win outcome." *Id*. at 543. One example given by the court of such a "win-win outcome" included a debtor truck driver whose creditor was the state licensing bureau which unless paid in full would yank his license, with the consequence that the debtor would not have earnings out of which to make the payments called for in his plan. *Id*. Another example given in *Crawford* was a creditor who supplied the tools of the debtor's trade, and unless paid in full would cut him off and thereby prevent him from plying his trade, again with the result of depriving him of the earnings needed to fund the plan. *Id*. In those scenarios,

5

the classification was permitted because the creditors as a whole would be better off and so would the debtor. *Id*.

The *Crawford* court then went on to note the other extreme whereby classification might favor a nondischargeable debt consisting of a fine imposed, or restitution ordered, in respect of a criminal fraud that the debtor committed. If he proposed a classification under which the nondischargeable debt would be paid in full and the other creditors would receive nothing at all, approval of such a plan would be unreasonable. *Id*. The actual plan at issue in *Crawford* was in between the two extremes and proposed to pay the debtor's nondischargeble delinquent child support in full, after which other nonpriority unsecured creditors would receive a dividend between three and six percent. The court of appeals upheld the bankruptcy court's rejection of the plan, finding the court did not abuse its discretion when it found the plan unfairly discriminated against the other creditors. *Id*. at 544. The court noted the result may have been different if the debtor had shown "he would be staggering under such a crushing load of undischarged debt as to make it inevitable or nearly so that he would soon be back in bankruptcy court, this time under Chapter 7 [and] especially if the unsecured creditors would do worse in Chapter 7 than they would do under [the debtor's plan]." *Id*. at 543.

I am satisfied that the criteria described in *Crawford* for whether to allow classification of a particular claim or certain types of claims need not be applied when Congress has provided us with a bright line rule. The Bankruptcy Code has many bright line rules, such as the 90 day look-back period for non-insider preferences and the prohibition on cramming down the value of vehicles purchased within 910 days of bankruptcy. When these specified facts apply to a case, the applicable statute determines how the matter is treated for bankruptcy purposes; judicial

6

discretion as to fairness and equity do not come into play. In the context of allowable chapter 13 plan provisions, Congress has authorized separate treatment for creditors having claims when there is a co-debtor on a consumer debt under section 1322(b)(1). This special treatment is authorized in the same sentence in the subsection that otherwise prohibits unfair discrimination, so it is clear that no fairness analysis is needed. The provision that allows for the curing of a default and maintenance of payments on a debt with a term that extends beyond the term of the plan comes a little later in the statute, but still in the same subsection. 11 U.S.C. § 1322(b)(5). Congress determined that long term debt, both secured and unsecured, may be treated differently from other creditors that are of the same priority. Judge Martin was correct in his analysis in *Hanson*, 310 B.R. 131, of the interplay of these two provisions of 11 U.S.C. § 1322(b). If the plan provides for the cure of a default and maintenance of payments on a debt, the terms of which extend beyond the term of the plan, it is not for the court to determine whether this is fair to the other creditors or not. Such a provision is authorized by statute. This portion of the trustee's objection to confirmation is overruled.

*Are the debtors' expenses reasonable and necessary to be expended for their maintenance and support?*

At the hearing on February 10, 2009, the court reserved the right to review the debtors' expenses, including the following: two cell phones for $120 per month; a land line telephone for $30 per month; internet access for $45 per month; cable television for $90 per month; haircuts, toiletries, grooming, and cosmetics for $97 per month; pet expenses for $65 per month; and gifts for $50 per month. *See* Amended Schedules I & J. Due to Mr. Truss' ongoing job searches (he has been only intermittently employed for the last year), the debtors believe they need extra

telephone service. I believe this is excessive. If telephone traffic with potential employers is indeed that heavy, he should be employed by now. Ms. Truss needs the high speed internet service for both school and work, and this appears to be reasonable. The other expenses for cable, grooming, pet, and gifts are slightly excessive and are not consistent with the "bare bones" budget – with the resulting pittance to creditors – Ms. Truss testified to. The Trusses could afford another $50-75 per month to give unsecured creditors more than the 2.44% dividend they are presently offering. Especially in this time of universal belt-tightening, this Court does not believe it is asking too much of the debtors to cut back a bit more on non-essentials in order to pay more to their unsecured creditors. Additionally, Ms. Truss indicated they would be willing to provide in the plan that they will report to the trustee when Mr. Truss finds employment and, after a reasonable interval to see if it is more than short term, they may be able to offer more. This portion of the trustee's objection is sustained. The debtors will have 30 days to submit an amended plan consistent with this decision.

      A separate order will be entered accordingly.

April 24, 2009

                                              Margaret Dee McGarity
                                              Chief Judge, U.S. Bankruptcy Court